UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

        Case No. 11-20386

        HON. GEORGE CARAM STEEH

LAWRENCE SAMPLE,

        Defendant.
_____/

ORDER DENYING AS MOOT DEFENDANT'S
MOTION FOR DISCOVERY [DOC. 37], DENYING MOTIONS TO
SUPPRESS EVIDENCE [DOCS. 21, 22, 23] AND DENYING MOTION FOR
DISCLOSURE AND PRODUCTION OF CONFIDENTIAL INFORMANTS [DOC. 24]

I. Defendant's Motion for Discovery [Doc. 37]

    Defendant Lawrence Sample has moved for an order requiring the government to turn over evidence in its possession that is favorable to defendant and material to guilt or punishment as required by Fed. R. Crim. P. 16(a)(1)(C), Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and the Jencks Act. The government has assured defendant and the court that it will make available all exculpatory and impeachment evidence that must be disclosed under Brady and its progeny. The government also indicates it will provide witness statements to defense counsel prior to trial. As such, defendant's motion for discovery is DENIED AS MOOT.

II. Defendant's Motions to Suppress [Docs. 21, 22, 23]

On December 2, 2011, defendant filed three motions to suppress evidence. Defendant seeks to suppress evidence seized pursuant to search warrants executed at McNichols [21] and Teppert, Woodlawn, McNichols & Farmbrook Streets [22]. Defendant also seeks to suppress evidence for false statements in a search warrant and requests an evidentiary hearing [23]. The court held an evidentiary hearing on January 23, 2012, including testimony from Task Force Agents DeBottis and Voiles. At the hearing, defendant attempted to expand the scope of the testimony beyond the issues raised in his motions to suppress. The court limited the testimony to the issues raised by defendant in his papers, but permitted defendant to file supplemental briefs to raise any new alleged false statements in the search warrant affidavits. Defendant filed a supplemental brief on February 6, 2012, and the government responded to the new allegations on February 21, 2012. Although defendant was given an opportunity to file a reply brief, he did not do so. The court concludes that the testimony elicited at the hearing is sufficient to enable the court to assess the arguments raised by defendant in his original motions and supplemental brief. The court does not believe that additional oral argument or testimony is necessary to determine the pending motions to suppress.

There is a presumption of validity with respect to the affidavit supporting the search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). The Sixth Circuit holds that Franks "allows, under very strict standards, an inquiry into the issue of whether the affiant for the search warrant made knowingly and intentionally, or with reckless disregard for the truth, false statements in the affidavit." United States v. Riddick, 134 Fed. Appx. 813, 818-19 (6th Cir. 2005). Therefore, in order to be entitled to an evidentiary hearing on the veracity of the statements in the affidavit, there must be (1) a

2

"substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." United States v. Atkin, 107 F.3d 1213, 1216-17 (6th Cir. 1997).

    A. McNichols Street Apartment Search Warrant

On May 31, 2011 agents executed the arrest warrant for defendant. After finding him in his minivan and arresting him, they conducted a search of his person and found a key ring. The agents asked defendant if they could search his apartment and he denied them consent. (Report of Investigation, June 1, 2011). Task Force Agent Patrick DeBottis testified that he spoke to a witness in the apartment parking lot and compared the key taken from defendant with the witness's key to the common door of the apartment building. The witness, who was a resident of the apartment building, then let DeBottis and other agents into the common door. After gaining entrance, DeBottis verified the key from defendant's key ring opened the common door. At some point, Debottis remembers that the common door was propped open so the agents could enter and exit the apartment building at will.

Agents spoke with three other residents of the apartment complex and all three identified defendant, from a photograph, as a new tenant that occupied Apartment 201. Agents then spoke to the apartment manager, who confirmed that on May 3, 2011 Latesha Lander (the same name defendant's car was registered to) signed a rental agreement for Apartment 201. After learning that defendant occupied Apartment 201, agents brought a drug detection dog to the exterior door of that apartment, and the dog signaled that controlled substances were inside.

Task Force Officer Gary Voiles was not present at McNichols during the investigation described, but he was involved in the overall investigation of defendant and he drafted the search warrant affidavit for the McNichols apartment.  At paragraph 15 of the affidavit, Officer Voiles writes, "Agents from Group 2 subsequently utilized one of these keys which opened the common door to the apartment."  This statement is consistent with Agent DeBottis' testimony that he tested a key taken from defendant's pocket and it worked in the common door of the apartment building.  The fact that defendant possessed a key to the apartment building is also consistent with surveillance that observed defendant exiting the McNichols apartment building, and observed his car parked in the parking lot of the apartment. (McNichols Search Warrant Affidavit, ¶ 11).

Defendant next argues the canine sniff of the door to Apartment 201 from the common hallway violated his Fourth Amendment rights.  The Sixth Circuit has held that when "an officer enters a locked building, without authority or invitation, the evidence gained as a result of his presence in the common areas of the building must be suppressed."  United States v. Carriger, 541 F.2d 545, 552 (6th Cir. 1976).  The Sixth Circuit has specifically held that "the mere possession of a key will not transform an illegal entry into a valid one.  It is the *authority* to enter, not the manner of entry, that provides the legality for the officers' conduct; the most casual reading of *Carriger* reveals that *any* entry into a locked apartment building without permission, exigency or a warrant is prohibited."  United States v. Heath, 259 F.3d 522, 534 (6th Cir. 2001).

The Supreme Court has held that a "canine sniff" does not unreasonably intrude upon a person's reasonable expectation of privacy.  United States v. Place, 462 U.S. 696, 706-07 (1983).  Furthermore, the Court has held that governmental conduct that

4

only reveals the possession of contraband does not compromise any legitimate privacy interest.  United States v. Caballes, 43 U.S. 405, 408 (2005).  "[A] canine sniff is not a search within the meaning of the Fourth Amendment.  Of course, the canine team must lawfully be present at the location where the sniff occurs."  United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998).

The government argues that the agents were given access to the common hallway by the other residents and the manager, who had the authority to allow the canine unit into the hallway.  The only evidence offered to the contrary is Officer Voiles' statement in the search warrant affidavit that "Agents from Group 2 subsequently utilized one of these keys which opened the common door to the apartment."  As discussed above, the fact that the agents verified that the key taken from defendant indeed worked in the common door to the apartment building does not conflict with the testimony that the agents were given lawful access to the building by other residents.  Because the agents were lawfully present in the common hallway that led to defendant's apartment, the K-9 unit was lawfully in the location where the sniff occurred.

In addition to the key and the dog sniff, the search warrant affidavit contained references to evidence recovered from the execution of three previous search warrants.  Each search recovered a combination of drugs, currency and weapons.  The Teppert search also recovered documents of residency for defendant.  A man present at the Woodlawn search told agents he worked for defendant cleaning the residence in exchange for heroin.  A confidential source identified defendant from a photograph and stated the Woodlawn address was a heroin distribution house operated by defendant. A

5

confidential source stated that defendant maintained an apartment near McNichols Road and Alcoy Street as a stash house to aid in the distribution of heroin.

A search warrant was issued for the McNichols apartment, and during the search agents seized controlled substances and firearms. While minor inconsistencies are argued to exist between the search warrant affidavit and Agent DeBottis' testimony with regard to how the agents gained access to the common door of the apartment, there is a plethora of other evidence tying defendant to drug activity, and specifically tying him to the McNichols apartment, including surveillance of defendant at the apartment. All of this is included in the search warrant affidavit, which sets forth sufficient probable cause to believe that evidence of defendant's drug trafficking activities would be found in the McNichols apartment.

Defendant's motion to suppress evidence seized from the McNichols apartment is DENIED.

### B. Teppert, Woodlawn, McNichols and Farmbrook Streets

On various dates, agents obtained search warrants for the residences located at Teppert, Woodlawn and McNichols in the City of Detroit, as well as Farmbrook in Macomb Township. Defendant argues that at the time the searches were conducted, there was no probable cause to support the issuance of the warrants. "The critical element in a reasonable search is not that the owner of the property is suspected of a crime, but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which the entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 553 (1978). Defendant argues that the affidavits fail to set forth any evidence supporting the reliability of the confidential

informants, and fail to set forth any probable cause linking the drug activity to the specific residences.

1. Teppert

The affidavit stated that agents had personally observed numerous suspected narcotics transactions conducted by a black male driving a red Dodge mini-van registered to Latesha Lander at the Teppert address.  On June 17, 2010, agents interviewed two people who had been observed conducting a hand-to-hand transaction with the driver of the red van.  The individuals admitted they purchased heroin from the driver, and agents recovered a small baggie of suspected heroin.  On June 21 and 22, agents conducted surveillance on the red van, and observed more suspected narcotics transactions.  Agents observed the van drive to the Teppert address after completing a suspected transaction.  On June 22, agents set up a controlled buy with a confidential source.  Agents observed the red van leave the Teppert address and drive to meet the confidential source, returning to the Teppert address immediately after conducting the narcotics transaction.

The search warrant affidavit misidentifies the black male driver of the red van as Joseph Mathis.  The court heard testimony from Officer Voiles at the hearing on January 23, 2012 on this issue.  Officer Voiles testified that when he wrote the search warrant affidavit for Teppert, he believed the driver of the red van was Joseph Mathis.  After the search warrant and affidavit were signed, the driver of the red van was arrested, and law enforcement learned that the driver was Chaz Kennedy, not Joseph Mathis.

The question before the magistrate was whether there was probable cause to believe that evidence of a crime would be found in the Teppert residence. The identity of the driver of the red van does not increase or decrease the probable cause to search Teppert. The Teppert search warrant was supported by probable cause, including:

- extensive surveillance by DEA agents of the red van, including observing the driver of the van conduct numerous hand-to-hand suspected narcotics transactions in the surrounding area on four separate days;
- red van was registered to Latesha Lander at the Teppert address; and
- a controlled buy from the driver of the red van, where agents observed the driver and the van leave Teppert prior to the buy and return to Teppert immediately after. This occurred on same day as the warrant application.

The misidentification is not material to the probable cause to search the Teppert address. There is no evidence that the statements in the Teppert search warrant affidavit regarding Mathis were intentionally false or made with reckless disregard for the truth. The statements are simply not material to a finding of probable cause to search the location.

    2. Woodlawn

Defendant argues that the search warrant affidavit for the Woodlawn address contained two omissions and one misstatement, which are grounds for suppressing the evidence recovered in the search.

The first omission is that the affidavit failed to advise the magistrate that in a prior request to search Teppert Street, the unknown black male had mistakenly been identified as Joseph Mathis. At the time the Woodlawn affidavit was prepared, agents

knew that the man was actually Chaz Kennedy. This failure to correct information in a prior affidavit is not significant to the Woodlawn affidavit, nor has defendant shown that it was made with the intention to mislead the magistrate.

A second omission from the affidavit is that, at his arrest, Chaz Kennedy made a statement to agents that the drugs and weapons recovered from the Teppert residence belonged to him. The DEA investigative team, however, concluded that the items found during the search belonged to defendant. Defendant's birth certificate, driver's license, checkbook listing the Teppert address, social security card, and mail addressed to defendant and Latesha Lander were recovered. In addition, large size clothing, consistent with defendant's size, was found in the home. Chaz Kennedy is a thin man, and no clothing or documents appearing to belong to him were found in the home. For these reasons, agents concluded Kennedy was working for defendant, and the narcotics and weapons found in the Teppert home belonged to defendant.

The purpose of a search warrant affidavit is to set forth the facts that the affiant believes support a finding of probable cause. There is no requirement that all potentially exculpatory information be included in the search warrant affidavit. Omitting Chaz Kennedy's statement is not a false statement, nor is there evidence that it was omitted with an intention to mislead.

The affidavit provided information from a confidential source, who told agents an individual known as "Big Money" was a large scale heroin trafficker in the area of McNichols and Teppert streets, and that one month earlier, Big Money moved his distribution operation to Woodlawn. When shown a photograph of defendant, the source identified him as Big Money. This information was verified through a controlled

buy. Agents observed the source drive to Woodlawn, observed a black male exit the Woodlawn address and approach the source in his car. The black male walked back into the house and the source turned the heroin he purchased over the agents. The substance tested positive for heroin. The affidavit also stated that agents conducted surveillance at the Woodlawn address and observed short term vehicular activity consistent with narcotics trafficking.

Defendant alleges that the cell number the source called to arrange for the controlled purchase actually belonged to Lil B, Sample's younger brother. At the hearing, DeBottis explained that the first number the source called was defendant for the purpose of ordering heroin, and the second number called belonged to Lil B, to arrange for the pickup. This explanation is not inconsistent with the affidavit.

Defendant also argues that the Woodlawn affidavit contains the false statement that the source was searched for currency and none was found, when $700 in currency was actually taken from the source before the controlled purchase was executed. This omission is not material to the search warrant request, and has not been demonstrated to have been made with the intention to mislead. The search of the source was done to ensure that controlled substances recovered after the controlled buy were purchased from the suspect and not already in the possession of the CS. The same reason applies to the money used to purchase the controlled substances. Even without the inaccurate statement, the affidavit provides the magistrate judge with a basis for finding that there was probable cause that evidence of a crime would be found.

The Woodlawn affidavit was supported by sufficient probable cause, including:

10

- Agents had recovered large quantities of narcotics, currency, stolen firearms, scales and packaging equipment from the Teppert address. Items of residency for defendant wee recovered from this address.

- A confidential source told agents that "Big Money" was a large scale heroin trafficker in the area of McNichols and Teppert, and that one month ago he moved his distribution operation to Woodlawn. The source identified defendant by photograph.

- A controlled buy was set up and heroin was purchased from Woodlawn by a confidential source.

- Agents conducted surveillance at Woodlawn and "observed short term vehicular activity consistent with narcotics trafficking."

The alleged false statement and omissions identified by defendant are immaterial to probable cause to search the Woodlawn residence. A further *Franks* hearing on these issues is not warranted.

      3. <u>Farmbrook</u>

Defendant attempts to point out discrepancies between one of Officer Voiles' investigation reports and the search warrant affidavits for McNichols and Farmbrook. The inconsistencies are as follows:

- The report and the Farmbrook affidavit do not state that the unknown black male met with defendant on the porch of the Dresden residence on May 9, 2011, but this detail is included in the Farmbrook affidavit. At the hearing before this court, DeBottis testified he observed defendant on the porch of the Dresden residence. Therefore, DeBottis has now been

11

questioned on this issue, and the statement in the Farmbrook affidavit is not false.

- All three documents state the driver of the Rendezvous pulled door-to-door with a Taurus, which was occupied by a female and a male. The Farmbrook affidavit states the driver of the Rendezvous handed an unknown item to the male, while the report states the driver handed the item to the female. The government characterizes the discrepancy as a typographical error, which cannot form the basis for a *Franks* hearing. The court fails to see how the discrepancy is material to the issuance of a search warrant, where it is the witnessing of the drug transaction that is material to establishing probable cause.

- The affidavit for Farmbrook states that at the conclusion of the suspected narcotics transaction both vehicles immediately departed the area. The affidavit does not mention that the Taurus experienced mechanical difficulty and had to be pushed or towed several blocks away. The omission of this detail is not a false statement.

The Farmbrook search warrant affidavit included the following:

- A search of Teppert recovered large quantities of heroin and cocaine, packaging material, currency, three loaded handguns, and documents of residency for defendant and Lander. The Rendezvous used by defendant was parked in the backyard. Size 52 male clothing was also recovered.

- Agents recovered a loaded shotgun from Woodlawn, as well as numerous empty packages containing heroin residue and used syringes. Agents

        spoke to a man present at the search who stated he worked for defendant cleaning the residence and received payment in heroin.

- During surveillance on May 9, 2011, agents observed defendant at a residence on Dresden. Agents observed an unknown black male leave Dresden in the Rendezvous affiliated with defendant, and conduct a hand-to-hand transaction with two people in a Taurus.

- In May 2011, agents learned defendant was associated with an address on Farmbrook. Agents confirmed with the management of the apartment complex that Lander and defendant were listed on the rental paperwork. The 2003 Cadillac registered to defendant and Lander was observed at the address.

The Farmbrook search warrant affidavit set forth sufficient evidence to constitute probable cause.

    Defendant's motions to suppress evidence seized from Teppert, Woodlawn, McNichols and Farmbrook Streets, and for a *Franks* hearing are DENIED.

### III. Defendant's Motion for Disclosure & Production of Confidential Informants, [Doc.24]

    The indictment in this case was the result of an undercover investigation conducted by a DEA Task Force. On June 22, 2010, Officers Voiles and DeBottis cultivated a confidential informant, CS 758, who allegedly purchased illegal drugs from John Jacoby Mathis. Officer Voiles' affidavit states that CS 758 was a percipient witness and participant in the sale and purchase of heroin. This affidavit was instrumental in obtaining a search warrant of Teppert Street. Defendant argues CS 758 is the only witness in a position to contradict the testimony of Voiles and DeBottis.

On August 31, 2010, Voiles and DeBottis used a confidential informant, CS 764, to participate in the sale and purchase of heroin from Chaz DeAnthony Kennedy, which was instrumental in obtaining a search warrant at Woodlawn Street. Again, CS 764 is the only witness in a position to contradict the testimony of Voiles and DeBottis.

Officers developed an additional source of information (SOI), and based upon information received from the SOI they obtained an arrest warrant for defendant. The SOI allegedly provided information concerning drug trafficking activity at the McNichols address.

Disclosure of confidential informants at suppression hearings is not required by the Due Process Clause. United States v. Raddatz, 447 U.S. 667, 679 (1980). As for disclosing the identity of the confidential informants for purposes of trial, the general rule is that the government enjoys a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Raviaro v. United States, 353 U.S. 53, 59 (1957). This privilege, however, is not absolute. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 61. The court is to balance the public interest in protecting the flow of information against the individual's right to prepare his defense. United States v. Moore, 954 F.2d 379, 381 (6th Cir. 1992). "[C]ourts must consider 'the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" Holman v. Cayce, 873 F.2d 944, 946 (6th Cir. 1989).

The defendant bears the burden of showing that disclosure is essential to a fair trial.  Moore, 954 F.2d at 381.  Courts have universally recognized that where the informant was not a participant or witness to the events underlying the defendant's potential criminal liability, the balance strongly favors non-disclosure.  Holman, 873 F.2d at 946.

The confidential informants were not participants in the crimes charged. Defendant argues that an *in camera* hearing to determine the existence of the informants is necessary because the informants are not "characterized as reliable by the agents."  The impeachment permitted under *Franks* "is only that of the affiant, not of any nongovernmental informant."  United States v. Martin, 920 F.2d 393, 398 (6th Cir. 1990).  Defendant cites to a Ninth Circuit case where the court determined that an *in camera* hearing should have ben held in order to test the veracity of the affiant. However, in that case, the defendant provided the district court with a nine-page affidavit from the person defendant believed was the informant relied upon in the search warrant affidavit.  In the affidavit, the person denied ever making the statements attributed to him by the officer.  United States v. Kiser, 716 F.2d 1268, 1270 (9th Cir. 1983).  In this case, defendant has not brought forth any specific evidence to question the information in the search warrant affidavits relating to the informants.

The three confidential informants were neither participants nor witnesses in the crimes charged against defendant.  Nor were they present during the execution of the search warrants.  Rather, the confidential informants were tipsters who provided initial information to law enforcement that served as the catalyst for, and/or supported, the

investigation into defendant's criminal activities. Defendant's request for an *in camera* hearing to determine the existence and identities of the informants is DENIED.

IV. Conclusion

For the reasons given above:

Defendant's motion for discovery is DENIED.

Defendant's motions to suppress are DENIED.

Defendant's motion for disclosure of informants is DENIED.

Dated: March 6, 2012

          S/George Caram Steeh
          GEORGE CARAM STEEH
          UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 6, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---