UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

                              Case No.  11-20386

vs.

                              HON.  GEORGE CARAM STEEH

LAWRENCE SAMPLE,

                Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [ECF No. 77]

Defendant Lawrence Sample moves the Court for compassionate release due to dangers posed by the spread of COVID-19 at the federal prison where he is housed.  For the reasons set forth below, Defendant's motion for resentencing is DENIED.

I.    Factual Background

On August 20, 2012, Defendant pled guilty pursuant to a Rule 11 Agreement to possession with intent to distribute heroin, possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm.  On December 10, 2012 the Court sentenced Defendant to 180 months, followed by 8

- 1 -

years of supervised release.  Defendant was initially detained on June 1, 2011 and has been incarcerated since that date.  Defendant is 42 years old and his projected release date is March 10, 2024.

Defendant is currently housed at FCI Elkton, a minimum-security facility in Ohio.  Due to a lack of virus testing, as well as the dormitory-style living conditions which do not allow for appropriate social distancing inside the prison, COVID-19 has posed a significant threat to the health and safety of inmates and prison staff at Elkton.  At present there are 135 inmates and 8 staff with confirmed positive cases of COVID-19.  *See* https://www.bop.gov/coronavirus/index.jsp.  The situation at FCI Elkton is at the root of a putative class action lawsuit brought by the ACLU on behalf of inmates with conditions that put them at increased risk of complications or death if they contract COVID-19.  That lawsuit seeks to have categories of inmates receive expedited consideration and immediate transfer from the physical confines of Elkton.  *Craig Wilson, et al. v. Mark Williams, et al.*, Case No. 4:20-cv-00794.

Defendant Sample has chronic asthma, which he has long treated with the medication albuterol.  Defendant's medical records have been submitted to the Court under seal.  A record in 2019 noted that Defendant had "mild intermittent asthma" and that he "infrequently needs to use

albuterol for rescue puffs in the day or night." (Doc. 82, PageID 989) At that time, Defendant had "no reports [of] chest pain, pressure," or shortness of breath. (*Id.*) Another 2019 medical record described Defendant's asthma as "unspecified," and noted that his albuterol inhaler was not to be used daily, only "as needed." (Doc. 82, PageID 1008-1009) In January 2020, the records describe his asthma as "mild intermittent" and noted that he "has not need[ed] inhaler in past 6 months." (Doc. 82, PageID 1020) On April 29, 2020, Defendant received medical treatment for chest pain and shortness of breath. (Doc. 82, PageID 1017) Defendant told medical staff that he felt pain in his chest and was using his albuterol inhaler 2x per day. He did not report a cough, body aches, or a sore throat. His lungs were "clear to auscultation." (Doc. 82, PageID 1018) Defendant was prescribed an additional asthma medication: the inhaler Mometasone Furoate. (*Id.*) He was scheduled to have a follow-up appointment on May 22, 2020.

On April 28, 2020, Defendant's attorney wrote to the caseworker at Elton requesting that Defendant be considered for transfer to home confinement, or alternatively to be furloughed to home confinement until the abatement of the pandemic. Defendant referred to his asthma and requested that he be released to the home of his brother or sister.

- 3 -

Defendant has not received a response to his request.

Defendant contends that while incarcerated, he has been a model prisoner, became a life coach and works as a tutor in the education department assisting other inmates in achieving their GED. He also contends he has no history of violent crime, while admitting he pled guilty to possessing a firearm in furtherance of a drug trafficking crime. However, Defendant's criminal history also includes assault with intent to do great bodily harm, after he entered someone's home and shot the resident in the leg.

Following directives from the Attorney General, the Bureau of Prisons ("BOP") is assessing its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. 03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP. This process necessarily requires the BOP to identify the best candidates for release, ensure that their homes are suitable for home confinement, and arrange a way to quarantine each of them for 14 days. As of May 21, 2020, these directives have resulted in at least 2,932 inmates being placed on home confinement. *See* https://www.bop.gov/coronavirus/index.jsp.

II.    <u>Legal Standard</u>

This Court's authority to grant Defendant's request for

compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A), as

amended by the First Step Act of 2018.  This section allows for judicial

modification of an imposed term of imprisonment when three criteria have

been met: (1) the defendant has first exhausted all administrative remedies

with the BOP or at least allowed the BOP 30 days to act on his request

before seeking compassionate release on their own motion;  (2)

extraordinary and compelling reasons warrant such a reduction; and (3)

the reduction is consistent with the applicable policy statements issued by

the Sentencing Commission and the court has considered the factors set

forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

An "extraordinary and compelling reason" for the reduction can be

satisfied in cases where a defendant's medical conditions or overall state

of health are such that they cannot be treated effectively or will worsen in a

custodial environment.  To qualify, a defendant must have a medical

condition, age-related issue, family circumstance, or other reason that

satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not

[be] a danger to the safety of any other person or to the community,"

USSG § 1B1.13(2).

Before granting a motion for compassionate release, the Court must review the § 3553(a) factors to the extent that they are applicable and determine whether they support or undermine the sentence reduction.

III.  Analysis

    A.  Exhaustion of Administrative Remedies

Until recently, only the BOP could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for compassionate release themselves.  First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).  The provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.*  If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting 30 days from when the warden at the facility received the request. 18 U.S.C. § 3582(c)(1)(A).

Courts, including those in this district, are split on whether the exhaustion requirement is waivable in the midst of the current pandemic. *Compare United States v. Alam*, No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (exhaustion is required) *with United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (Hood,

C.J.) (exhaustion may be excused).  This Court finds the analysis

undertaken in *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988

(S.D.N.Y.  Apr.  13,  2020) to be persuasive.  That court examined the

statutory language which gives a defendant the choice of either exhausting

administrative remedies or waiting 30 days after serving his petition on the

warden before filing a motion in court.  With the second option, the statute

allows a defendant to come to court before the agency has rendered a final

decision.  This demonstrates that Congress was less concerned with

protecting administrative agency authority and intended that defendants

have the right to a meaningful and prompt judicial determination.

Therefore, the *Haney* court concluded "that Congress cannot have

intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the

highly unusual situation in which the nation finds itself today."  *Id.* at *3

(*quoting United States v. Russo*, No. 16-cr-441, 2020 WL 1862294

(S.D.N.Y. Apr. 3, 2020)); a*ccord United States v. Atwi*, No. 18-20607, 2020

WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020)  (Michelson, J.); *United*

*States v. Demetrious Flenory*, No. 05-80955, 2020 WL 2124618, at *4-5

(E.D. Mich. May 5, 2020) (Lawson, J.).

     In this case, where Defendant did not submit a request to the warden

for compassionate release, he argues that he has nevertheless

- 7 -

constructively exhausted his administrative efforts. Defendant contends that the BOP has failed to respond to the request for home confinement that he made to his caseworker, the directives issued by the Attorney General, and the orders of the District Court for the Northern District of Ohio in the habeas litigation. Therefore, he argues that enforcing the exhaustion requirement in his case is futile.

First, BOP release to home confinement and court-ordered compassionate release are two different remedies governed by different standards. The BOP has the authority to determine a prisoner's place of confinement, 18 U.S.C. §§ 3621, 3624, including releasing an inmate to home confinement. Inmates placed on home confinement by the BOP do not have their sentences reduced or modified and while on home confinement they remain in the custody of the BOP. Compassionate release, on the other hand, allows the Court to modify a defendant's sentence. Second, the Court notes that Defendant has no basis for his conclusion that the BOP has failed to comply with directives it received from the Attorney General or another court. The mere fact that Defendant has not been placed in home confinement does not mean that an appropriate analysis has not been undertaken.

There is an undeniable value in having the BOP make the initial

review before an inmate is released. The BOP is already responding to the pandemic—not just through heightened safety measures, but by evaluating its entire prison population for home confinement. By requiring a defendant to exhaust, § 3582(c)(1)(A) gives the BOP the opportunity to gather an inmate's medical documentation and other records, evaluate the request, and decide in the first instance whether it justifies seeking compassionate release or pursuing some other form of relief. Still, the Court believes that § 3582(c)(1)(A)'s exhaustion requirement is waivable in certain instances, particularly where a defendant cannot feasibly exhaust their administrative remedies without the potential for serious health consequences.

The Court finds that waiver of the exhaustion requirement applies in this case.

B. Extraordinary and Compelling Reason

Next, there must be an extraordinary and compelling reason for the Court to modify Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Compassionate release is narrowly limited to those defendants who are most in need per USSG § 1B1.13. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family

circumstances; and (4) other reasons "[a]s determined by the Director of

the Bureau of Prisons," which the BOP has set forth in Program Statement

5050.50.  USSG § 1B1.13 cmt. n.1.

Defendant asserts that asthma makes him more at risk for

complications from COVID-19.  Intermittent asthma, which in Defendant's

case is treated with medication, is not a serious physical or medical

condition on its own to qualify as an "extraordinary and compelling reason".

The  CDC  has  found  that  the  following underlying medical conditions

place individuals at risk for severe illness from COVID-19: serious heart

conditions, the immunocompromised, severe obesity (defined as BMI of 40

or higher), diabetes, chronic kidney disease, and liver disease.  CDC

Website, People at Higher Risk.  In addition, the CDC has said that "people

with moderate to severe asthma may be at higher risk of getting very sick

from Covid -19." CDC Website, People with Moderate to Severe Asthma.

Defendant has no record of having moderate or severe asthma; instead,

his medical records refer to "mild intermittent asthma" that is treated with

medication as needed.

Furthermore, conditions at FCI Elton are improving with an increase

in testing and a decrease in COVID-19 infection rates.  This appears to be

due to numerous safety measures implemented by the BOP.  Elton FCI

appears to be past the peak of the infection.

Finally, § 1B1.13(2) only permits release if a defendant is "not a danger to the safety of any other person or to the community." Defendant's criminal history does not support such a conclusion.  In 2003, Defendant was arrested and found in possession of two firearms.  (PSR  ¶ 37.)  At his arrest, Defendant provided a false name to the arresting officer.  Defendant ultimately pleaded guilty to attempted carrying a concealed weapon and was sentenced to $600 in fines and costs.  In 2004, Defendant was arrested after entering a home and shooting the resident of the home in the leg. (PSR ¶ 38.)  He was convicted after a jury trial of assault with intent to do great bodily harm less than murder and felony firearm.  Defendant was sentenced to 23 months to 10 years.  In June  2008, he was released on parole. (*Id.*)  Only two years later Defendant was under investigation by the DEA for engaging in drug trafficking in the case resulting in his current sentence.

C.    18 U.S.C. § 3553(a) Factors

In Defendant's case, the § 3553(a) factors, including his history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh in favor of denying his request for compassionate release.

- 11 -

For all of the reasons outlined above, Defendant's motion for

compassionate release is DENIED.

Dated:  May 26, 2020

<div style="margin-left:40%">

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

</div>

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 26, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---